**Jimmie Lee PENICK, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 17S00–9404–CR–389.

Supreme Court of Indiana.

Dec. 19, 1995.

Susan K. Carpenter, Public Defender, J. Michael Sauer, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for appellee.

## ON DIRECT APPEAL

SELBY, Justice.

Jimmie Lee Penick pled guilty to one count of murder, and was sentenced to sixty (60) years, the maximum allowed under his plea agreement, to be served consecutively to a prior Ohio sentence. He now appeals from this sentence.

The issue on appeal is whether the trial court, in determining the sentence, considered improper aggravating factors and failed to consider mitigating factors which were supported by the record.

### Facts

Penick, Mark Goodwin, Keith Lawrence, and David Lawrence were all workers for amusement companies, and were working at the DeKalb County Free Fall Fair. All were involved in Satanic practices. William Anthony Ault, also a co-worker, wanted to join the Satanic Church. Since Ault knew about a previous murder committed by Penick, defendant and the others wanted to scare him in order to keep him from talking about it.

On September 25, 1991, Brenda Ferguson, a friend, was asked to help Goodwin find a secluded place where they could initiate Ault into the Satanic Church. After the carnival closed for the evening, Ferguson drove the five men to a secluded farm building, and dropped them off. Ault was asked to lie down on a door, which was being used as an altar. He was then tied up and gagged. Keith Lawrence read an invocation to Satan. Using Keith Lawrence's knife, Penick made a deep cut on Ault from the neck to the stomach. Goodwin and the Lawrences also made cuts on Ault's chest and abdomen in the form of an inverted cross, as well as other cuts. Penick then asked Ault if he were ready to die, and when Ault answered, Penick slit his throat. Penick, Goodwin and Keith Lawrence cut off Ault's head and hands, and attempted to burn them. After disposing of the remains, the members of the group and Ferguson used money stolen from Ault to purchase food at Arby's.

Keith Lawrence pled guilty to conspiracy to commit murder, and received a fifty year sentence, with 20 years suspended. His brother, David Lawrence, pled guilty to assisting a criminal, and received eight years. Mark Goodwin pled to assisting a criminal and battery committed by means of a deadly weapon. He received eight years for each charge, to be served concurrently. [R. 1331–32].

On November 23, 1993, Defendant pled guilty to murder. In exchange, the state withdrew its request for the death penalty. Both sides agreed that the trial court would sentence defendant, with the State and defendant free to argue the sentence. Defendant was sentenced to sixty years, and now appeals from that sentence.

### I. Aggravating and Mitigating Factors.

In this case, the trial judge found ten aggravating factors, and one mitigating factor. The aggravating factors are:

(1) Defendant Jimmie Lee Penick has a history of delinquent activity and criminal activity that is specifically described in the Pre–Sentence Investigation Report including adjudications for delinquent acts and convictions for adult criminal acts,

(2) Defendant Jimmie Lee Penick is in need of correctional or rehabilitative

treatment that can best be provided by his commitment to a penal facility for the reason that past foster home placements, multiple probations, and multiple periods of incarceration for brief times have not caused him to cease criminal activity and to become rehabilitated,

(3) Imposition of a sentence reduced or suspended in any way would depreciate from the seriousness of this most serious classification of crimes in Indiana perhaps the most heinous crime ever committed in DeKalb County, Indiana,

(4) Defendant Jimmie Lee Penick bound the hands and feet of the victim and gagged him all while the victim was still alive thus rendering the victim physically defenseless prior to the act of torture and killing the victim,

(5) The death of the victim at the hands of the Defendant Jimmie Lee Penick was painful and torturous to the victim,

(6) Immediately following the death of the victim Defendant Jimmie Lee Penick participated in dismemberment of the victim's body including the victim's head and hands,

(7) Immediately following the death of the victim Defendant Jimmie Lee Penick orchestrated and assisted in concealment of the victim's body remains from being discovered,

(8) Later on the day of the murder Defendant Jimmie Lee Penick knowingly ate food purchased with money stolen from the deceased victim,

(9) Defendant Jimmie Lee Penick committed this murder after careful planning and after luring the victim to the murder site for the purpose of killing him and after conspiring with at least three (3) other persons in planning and accomplishing the murder, and

(10) This was the second time that Defendant Jimmie Lee Penick has murdered someone because previously in August of 1991 he murdered a man in Fulton County, Ohio also cutting his throat with a knife.

[R. 1223–24, 1414–18]. Aggravating factors (1), (2), and (3) are express statutory factors under § 35–38–1–7.1(b). The other aggravators are permitted under subsection (d), which allows the trial judge to consider factors other than those which are expressly listed.

The one mitigating circumstance found by the trial judge is that the Defendant Jimmie Lee Penick was cooperative and appeared to be open and truthful in the pre-sentence investigation process. [R. 1224].

A. Aggravating Factors

 Only one aggravator is necessary in order for the trial court to impose an enhanced sentence. *Reaves v. State* (1992), Ind., 586 N.E.2d 847, 852; *Fugate v. State* (1993), Ind., 608 N.E.2d 1370, 1374. Factors 1, 4, 8, 9, and 10 go unchallenged by the defendant. These factors alone are enough to support an enhanced sentence. *Pruitt v. State* (1993), Ind., 622 N.E.2d 469, 474, *reh'g denied*, (history of criminal activity alone is enough to support an enhanced sentence). Therefore, even if we were to conclude that the challenged factors are inappropriate, sufficient aggravating factors would still remain to support the sentence imposed by the trial court. However, because the trial court must engage in a balancing process in order to reach the sentence, it is appropriate for us to address the challenged factors.

 Defendant first argues that the court considered several aggravating factors which are not supported by the record. The first of these is that Penick is in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility. Penick argues that the trial court must state why a defendant would be best served by commitment to a penal facility, and he claims that the trial court did not do that. However, the trial court explained that prior multiple probations and multiple incarcerations have not caused the defendant to cease criminal activity and be rehabilitated. [R. 1223–24]. This is more than a mere perfunctory recitation, and is sufficient to support this aggravating factor. *See Shackelford v. State* (1993), Ind.App., 622 N.E.2d 1340, 1345.

 Penick next argues that aggravator (5), the death was painful and torturous, is

inappropriate. Penick does concede that the victim suffered some pain, but argues that virtually all murders involve pain or torture, so this is not an element particular to the facts of this case which can be used to justify imposition of enhanced and consecutive sentences. However, infliction of grave injury and pain over an extended period of time is sufficient to support an aggravating factor. *Loveless v. State* (1994), Ind., 642 N.E.2d 974, 977. Penick's own words describe how the victim's chest and abdomen were cut open, how Goodwin tried to cut out the victim's heart before he died, and how the victim remained conscious throughout this and responded to questions from the defendant. [R. 1300]. Only after defendant slit the victim's neck did the torture end. There is sufficient evidence on the record to support this aggravator.

Defendant also argues that aggravator (3), "imposition of a reduced or suspended sentence would depreciate the seriousness of the crime," is applicable only when the court is considering the imposition of a reduced sentence, not when considering whether the defendant should receive less than the maximum enhanced sentence. *See* I.C. § 35–38–1–7.1(b)(4). Defendant is correct that this statutory factor focuses on imposition of a reduced sentence and it may be used only when considering the imposition of a sentence which is shorter than the presumptive sentence. *E.g., Walton v. State* (1995), Ind., 650 N.E.2d 1134, 1136–37. Thus, the trial court improperly applied this aggravator. However, due to the large number of remaining aggravators, we cannot say that the trial court was in error in imposing an enhanced sentence.

Finally, defendant argues that aggravators (6) dismemberment of victim's head and hands, and (7) concealing victim's body, are one in the same. Even if defendant is correct, this would not be sufficient error to require modification of the sentence. The balancing performed by the trial judge is qualitative, not quantitative. "It is for the trial judge to determine the sentencing weight to be given the aggravating or mitigating factors." *Gilley v. State* (1989), Ind., 535 N.E.2d 130, 133. Thus, even if these two aggravators are combined, this would not upset the qualitative balance. Furthermore, we do not believe that these are the same factors. Although removing and burning the hands may have been done to conceal the identity of the victim, removal of the head had nothing to do with this. Defendant himself stated that the head was removed in order for Keith Lawrence to give the skull to a friend. [R. 1300].

Defendant also argues that the trial court relied on impermissible factors, including the harm to the community and impact on the victim's friends and family. However, the trial court was careful to exclude these items from his list of aggravators. Further, even if the trial judge had considered impermissible factors, if there are sufficient proper aggravating circumstances to support an enhanced sentence this court should affirm the sentence. *Scheckel v. State* (1993), Ind., 620 N.E.2d 681, 684.

We hold that the trial court did find sufficient proper aggravating circumstances to support the enhanced sentence in this case.

### B. Mitigating Factors.

Defendant next argues that the trial court failed to consider mitigators which were clearly supported by the record. Although a court must consider the evidence of mitigating factors presented by a defendant, the finding of mitigating circumstances lies within the sound discretion of the trial court. *Aguirre v. State* (1990), Ind., 552 N.E.2d 473, 476. The trial court is not obligated to make a finding of mitigating factors, nor explain why it has chosen not to do so. *Avance v. State* (1991), Ind., 567 N.E.2d 1149, 1154. Further, a "trial court is not obligated to accept a defendant's version of what constitutes mitigating circumstances." *Magers v. State* (1993), Ind., 621 N.E.2d 323, 324. Although we have previously looked with disfavor upon a trial court which fails to discuss or find any mitigating factors when such are clearly supported by the record, *Scheckel*, 620 N.E.2d at 685, such is not the case here. The trial judge did find one mitigator, and discussed why he failed to find others. [R. 1224, 1418–19].

█ Defendant argues that the court overlooked several mitigators. The first is the defendant's admittedly abusive childhood. The court noted the abusive childhood, but expressly declined to consider it to be a mitigator in this case. [R. 1418–19]. Penick argues that, unlike the situation in *Loveless*, 642 N.E.2d at 977, evidence existed to show a connection between his abusive childhood and the crime, thus requiring a finding of a mitigating factor. The court indeed noted that the "horrible, chaotic, abusive violent life" was an explanation for the crime, but did not justify or excuse the crime. This indicates that the court considered the connection between Penick's childhood and the crime, but failed to find it relevant to his level of culpability. This is within the discretion of the trial court, and we find no error.

█ Defendant next argues that he acted under the influence of his strong beliefs in Satanism. Defendant also argues that he has made significant positive changes while incarcerated. The trial court noted defendant's involvement in Satanism, as well as his minister's testimony about his conversion to Christianity, but chose to give neither the influence of strong beliefs nor this jail house conversion any mitigating weight. We do not find abuse of discretion for failure to find mitigating factors in this evidence.

█ Finally, defendant claims his sincere remorse should be a mitigating factor. However, a finding of remorse is within the sound discretion of the trial court. *Enamorado v. State* (1989), Ind., 534 N.E.2d 740, 744. We find no abuse of discretion with the trial court's findings of mitigating circumstances.

## II. Reasonableness of Sentence

█ The defendant argues that a sentence of sixty years is manifestly unreasonable when compared to the sentences given to the others who were involved in this murder. However, the trial court found Penick to be the person most responsible for Ault's death. [R. 1412]. Because Penick's involvement was greater than the other partici-

pants, it is not manifestly unreasonable for him to receive a greater sentence. *See Spranger v. State* (1986), Ind., 498 N.E.2d 931, 945–46, *reh'g denied.* Penick was the only participant to be convicted of murder, and the trial court imposed a statutorily allowable sentence for that crime.

█ Lastly, defendant complains that his sentence is to be served consecutive to an Ohio sentence, and this is manifestly unfair. Defendant could have gone further and argued that the trial judge was without power to order the sentences to be served consecutively, since he was not imposing both sentences at the same time.[1] However, we have held that this prohibition on consecutive sentences not imposed at the same time applies only if both cases are Indiana cases. *Reaves*, 586 N.E.2d at 851–52; *Chanley v. State* (1991), Ind., 583 N.E.2d 126, 131–32; *Carrion v. State* (1993), Ind.App., 619 N.E.2d 972, 973. Furthermore, Indiana defendants are not entitled to credit on an Indiana sentence while incarcerated in another state. *Carrion,* 619 N.E.2d at 973. Thus, the result would have been essentially the same even if the sentences had not been imposed consecutively. Finally, given the large number of aggravators in this case, we do not find consecutive sentences to be manifestly unfair.

## Conclusion

The sentence of sixty years imposed by the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.

---

1. At the time of sentencing, I.C. § 35–50–1–2 had been interpreted as allowing the trial judge to order consecutive sentences only if that judge is imposing both sentences at the same time. The statute was amended, effective July 1, 1994, to allow the trial court to impose sentences to be served consecutively, even if not imposed at the same time.