## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 18 2019, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer L. Koethe
Navarre, Florida

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Joshua Ratliff,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

April 18, 2019

Court of Appeals Case No.
18A-CR-1951

Appeal from the La Porte Superior Court

The Honorable Michael S. Bergerson, Judge

Trial Court Cause No.
46D01-1711-MR-4

**May, Judge.**

[1] Joshua Ratliff appeals his conviction of murder.[1] He presents two issues for our review, which we restate as:

> 1) Whether the State presented sufficient evidence to overcome his self-defense argument; and

> 2) Whether the State presented sufficient evidence to overcome his argument of sudden heat.

We affirm.

## Facts and Procedural History

[2] On November 11, 2017, Ratliff discovered Sheryl Walker, his girlfriend and the mother of his children, had been unfaithful to him with Brian "Puncho" Turner. Walker's friend, Kaitlyn Steinert, confirmed the infidelity. Ratliff and Walker argued, and then Ratliff went with Kevin Wash, Ben Washington, Todjie Lowe, Jonathan Isbell, and Corde Williamson to play video games at Isbell's home. At that time, Ratliff was upset "for a little [about] whatever incident happened between him and his girlfriend[.]" (Tr. Vol. II at 151-52.) Ratliff told the other men "he wanted to get a one-on-one with [Turner]." (*Id.* at 180.) A few hours later, the men went to Walker's home. They continued to "just chill[] some more" in the "attic room." (*Id.* at 155.) They continued to

---

[1] Ind. Code § 35-42-1-1 (2017).

talk about Ratliff wanting to fight Turner discussed being present "[j]ust to make sure nothing happened . . . besides the one-on-one." (*Id.* at 182.)

[3] Ratliff convinced Walker to entice Turner to her apartment without telling Turner that Ratliff wanted to confront him. Ratliff told Walker what to say when she talked to Turner. Steinert drove Walker to a gas station to pick up Turner. Ratliff, Washington, and Lowe followed in a separate car. Wash, Isbell, and Williamson stayed at the apartment to listen for the children sleeping but remained in the attic.

[4] When Steinert, Walker, and Turner returned to the apartment, Ratliff directed Steinert, via text, for them all to go inside. Steinert and Turner sat down in the living room. Walker went to check on the children. Ratliff, Washington, and Lowe returned soon thereafter. Ratliff did a "slight jog" up the stairs and entered the apartment. (*Id.* at 189.) Washington and Lowe did not go in.

[5] As Steinert sat on the couch, she saw Ratliff enter the room with "a gun in his hand." (Tr. Vol. III at 193.) Ratliff "said something like, 'What are you gonna do now bitch[?]'." (*Id.* at 194.) Ratliff cocked the gun and fired it. Turner ran from the room, and Ratliff followed him. Steinert ran out of the apartment and did not see Turner return fire. When the men, who were outside with the car, heard gunshots, they ran. When the men in the attic heard gunshots, they ran down the stairs and exited the apartment.

[6] Walker returned from checking on the children and observed Ratliff enter the apartment with "a gun in his hand." (*Id.* at 233.) She saw Turner "just had his

hand in his pocket." (*Id.*) After Ratliff shot at Turner, Walker ran back to her children's room. Ratliff and Turner followed behind her. Walker hid behind a closet door and was only able to hear the altercation. When she came out from behind the door, Turner was dead on the floor. Ratliff asked her to call 911, but she was unable to locate her phone. Ratliff called the police.

[7] Walker and Ratliff first told the police Turner was an intruder, and Walker claimed she had shot the gun. After leaving the apartment, later that night, Ratliff contacted Steinert and told her to "delete the text" where he had directed her to take Turner inside. (*Id.* at 196.) Ratliff changed his story over time until eventually he admitted he wanted to fight Turner because he knew Walker had been cheating on him with Turner. Ratliff still maintained he only fired in self-defense after Turner fired at him.

[8] The police found ten shell casings scattered around the apartment. These casings matched the Taurus 9mm handgun Ratliff admitted he had fired. Officers found a "Lorcin brand, semi-automatic pistol, .25 caliber[,]" (Tr. Vol. II at 71), with a "cartridge casing . . . still wedged inside[,]" (*id.*), "near [Turner's] body[.]" (*Id.* at 85.) The wedged casing indicated the gun had fired once and then malfunctioned. No other casings from this gun were located in the apartment. Holes were found in the walls of the apartment; however, as no projectiles were recovered from the holes, none were confirmed to be bullet holes. The only confirmed bullet hole was located underneath Turner's body. That hole had "one bullet fragment recovered" from it. (*Id.* at 120.)

On November 13, 2017, the State filed murder charges against Ratliff. From June 4, 2018, until June 7, 2018, the court held a jury trial. The jury found Ratliff guilty. On July 17, 2018, the trial court sentenced Ratliff to fifty-five years. The trial court's sentencing order stated:

> The Defendant's ever evolving version of events was replete with inconsistencies and outright lies. His claim of self defense, having fired 10 shots at the victim, is preposterous.
>
> The Court believes the defendant to be an extremely dangerous man capable of killing Brian C. Turner without genuine remorse.
>
> However, some mitigating circumstances exist.
>
> > 1. Certainly, a lengthy executed sentence in the Indiana Department of Correction will result in undoubtable hardship to Defendant's family; and
> >
> > 2. the [sic] only other mitigating thing I can think of is that the Defendant is not the worst of the worst.
>
> The Court finds that the following aggravating circumstances exist:
>
> > 1. The Defendant has a moderate history of criminal of delinquent behavior; both as a juvenile and as an adult.
> >
> > 2. The defendant is a moderate risk to re-offend.
> >
> > 3. That the defendant used much more force to commit this crime than was necessary.

4. That a reduced sentence would depreciate the seriousness of the offense.

5. That under all of the circumstances, Probation is not reasonable.

The Court finds that the aggravating circumstances and the mitigating circumstances are evenly balanced.

(Appealed Order at 2.)

# Discussion and Decision

[10] Ratliff argues the State did not present sufficient evidence to overcome his claims of self-defense or, in the alternative, sudden heat. Our standard for reviewing a challenge to the sufficiency of evidence to rebut a claim of self-defense or for a claim of sudden heat is the same standard used for any claim of insufficient evidence. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000) (self-defense); *Carroll v. State*, 744 N.E.2d 432, 434 (Ind. 2001) (sudden heat).

[11] When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the fact-finder's decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the ruling. *Id.* We affirm a conviction unless no

reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the decision. *Id.* at 147.

## Self-Defense

[12] To prove Ratliff committed murder, the State needed to present evidence Ratliff "knowingly or intentionally kill[ed] another human being[.]" Ind. Code § 35-42-1-1(1) (2017). "A valid claim of self-defense is legal justification for an otherwise criminal act." *Wallace*, 725 N.E.2d at 840.

> A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
> > (1) is justified in using deadly force; and
> > (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

Ind. Code § 35-41-3-2(c).

[13] To prevail on such claims, a defendant must show he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the

violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). "When a claim of self-defense is raised and finds support in the evidence, the State bears the burden of negating at least one of the necessary elements." *King v. State,* 61 N.E.3d 1275, 1283 (Ind. Ct. App. 2016), *trans. denied*. "The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Id*. If a defendant is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 801.

[14] Ratliff contends he only shot Turner after Turner started shooting at him. However, the evidence does not support that contention. Both Steinert and Walker testified Ratliff shot at Turner first. The State presented evidence that indicates, at most, Turner shot at Ratliff once; however, no evidence was presented to indicate Turner shot first. Ratliff's argument otherwise is an invitation for us to reweigh the evidence, which we cannot do. *See Lundquist v. State,* 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005) (appellate court does not reweigh evidence or assess credibility of witnesses).

[15] The State presented sufficient evidence to prove Ratliff committed murder, and in the process of presenting that evidence, overcame Ratliff's claim of self-defense. *See Huls v. State*, 971 N.E.2d 739, 747 (Ind. Ct. App. 2012) (State effectively overcame claim of defense when it presented evidence Huls "instigated and participated in the violence"), *trans. denied*.

# Sudden Heat

[16] As noted above, to prove Ratliff committed murder, the State needed to present evidence he "knowingly or intentionally kill[ed] another human being[.]" Ind. Code § 35-42-1-1(1) (2017). "The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder[.]" Ind. Code § 35-42-1-3(b) (2014). To obtain a murder conviction, the State must prove the absence of sudden heat when the defendant has raised the issue at trial. *Conner v. State,* 829 N.E.2d 21, 24 (Ind. 2005). Sudden heat occurs when a defendant is provoked by anger, rage, resentment, or terror in a manner sufficient to obscure the reason of an ordinary person and prevent deliberation and premeditation. *Stevens v. State,* 691 N.E.2d 412, 426 (Ind. 1997).

[17] Ratliff claims his actions, if not self-defense, were done in sudden heat. He argues he did not plan to kill Turner but only, at most, to fight him. He asserts Turner shot at him first and, thus, he was "responding . . . under sudden heat." (Br. of Appellant at 13.)

[18] Ratliff's friends testified he had been discussing the infidelity situation with them throughout the day. Ratliff told his friends he wanted to fight Turner. Ratliff indicated "he wanted to get a one-on-one with [Turner]." (Tr. Vol. II at 180.) The friends allegedly were staying in the area to ensure no more than a fight occurred. Ratliff told Walker what to say to Turner to entice Turner to come to Walker's apartment. Per Ratliff's instructions, Walker did not indicate to Turner that he was coming over to be confronted by Ratliff.

"The presence or absence of sudden heat is a question to be resolved by the finder of fact." *Patton v. State*, 668 N.E.2d 253, 254 (Ind. 1996). While Ratliff may now say he did not intend to kill Turner, it was not unreasonable for the jury to disagree as they were presented with evidence Ratliff was aware of the infidelity for several hours and, thus, had several hours to cool down. *See Wilson v. State*, 697 N.E.2d 466, 474 (Ind. 1998) (sudden heat not a consideration when defendant was aware of the infidelity prior to final altercation), *reh'g denied*. As noted above, the jury was presented sufficient evidence to find Turner did not fire first, such that the evidence does not demonstrate Turner provoked Ratliff to respond in sudden heat. *See Hornbostel v. State*, 757 N.E.2d 170, 180-81 (Ind. Ct. App. 2001) (holding when two versions of events are presented, the jury's guilty verdict shows "the jury found that the State negated the presence of sudden heat beyond a reasonable doubt"), *trans. denied*.

# Conclusion

As the State presented sufficient evidence to overcome Ratliff's claims of self-defense and sudden heat, we affirm.

Affirmed.

Baker, J., and Tavitas, J., concur.