Lavelle MALONE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9712–CR–678.

Supreme Court of Indiana.

Oct. 21, 1998.

David M. Henn, Indianapolis, for Appellant.

Jeffrey A. Modisett, Attorney General, Randi E. Froug, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Chief Justice.

Appellant Lavelle Malone was convicted of murder, Ind.Code § 35–42–1–1, and carrying a handgun without a license, a class C felony, Ind.Code § 35–47–2–1. He was also found to be a habitual offender, Ind.Code § 35–50–2–8. The trial court imposed the presumptive sentence for murder, fifty-five years, and added thirty years for the habitual offender finding. It imposed a concurrent eight-year sentence for the handgun.

Malone's counsel, David M. Henn, has prepared an excellent brief on his behalf in which he raises five issues:

1. Whether the foundation was adequate to admit various items of physical evidence;

2. Whether prosecutorial misconduct induced the trial court to admit certain evidence;

3. Whether it was error to admit two photographs of the victim's wounds;

4. Whether Malone's demand for the regular trial judge instead of the judge pro tempore should have been granted; and

5. Whether the court erred by admitting the prior statement of a witness.

### Factual Background and Procedural History

On June 19, 1996, Malone, his sister Legina Adams, her son, and the victim Clifton Hollonquest were at the home of Hollonquest's mother. The group departed in a gray station wagon owned by Tammi Ferguson, loaned to Malone by Ferguson's boyfriend, Edward Bodie. Bodie had loaned the car to Malone without Ferguson's permission. Malone first dropped off Legina Adams and her son at their house, then drove to the corner of 28th Street and Clifton Avenue. At the scene, witnesses saw Malone

and Hollonquest standing outside the car, apparently arguing. Malone fired one shot at Hollonquest, and then cradled him in an attempt to stop the bleeding. Finally, Malone re-entered the station wagon and left the scene.

After the shooting, the police learned that Malone may have been at the home of his girlfriend, Diane Kelly. He occasionally stayed overnight at Kelly's home during the month before the murder, and was there on the day of the crime. Upon execution of a search warrant for Kelly's home, the police discovered six live .38 caliber lead bullets in a dresser drawer. Kelly neither owned a gun, nor knew how the bullets ended up in her home. The bullets were admitted at trial.

The police also collected blood samples from the sidewalk where the victim was shot, the victim's body, the defendant, and the station wagon that the defendant drove. Those samples were also admitted into evidence.

The State planned to present the testimony of a DNA expert, but it misrepresented the witness's unavailability, thereby causing the court to order an otherwise unnecessary recess. While the testimony was not excluded as a sanction for the misrepresentation, it was excluded on another basis.

Malone's sister told the police shortly after the murder, that she saw Malone with a gun that day. At trial, she asserted that she could not remember many of the events surrounding the shooting, including that statement. The contents of her prior statement were admitted over Malone's objection that he could not effectively interrogate his sister on the statement due to her memory lapse.

Finally, the State entered into evidence two photographs of the wound, one a close view, and the other a view of the victim's upper body. The latter picture also depicted an incision made by medical personnel at the hospital.

Judge Patricia Gifford heard a motion in limine, but appointed Master Commissioner Nancy Broyles as judge pro tempore for the day of trial. Master Commissioner Broyles ruled on the admissibility of all the evidence described above.

## I. The Foundation for the Bullet and Blood Exhibits

Malone first claims that the State's blood and bullet exhibits were improperly admitted because counsel failed to lay a proper foundation.

■ A foundation for physical evidence is established where (1) a witness can testify that the exhibit is "like" an item associated with the crime, and (2) there is a showing that the exhibit is connected to the defendant and the commission of the crime. *Evans v. State*, 643 N.E.2d 877, 881 (Ind.1994). Malone challenges the bullet and blood exhibits by claiming they are unconnected to the defendant and the crime.

■ To be properly admissible, real evidence need only constitute "a small but legitimate link in the chain" of evidence connecting the defendant with the crime. *Andrews v. State*, 532 N.E.2d 1159, 1163 (Ind.1989). A trial court may properly admit evidence "even where there is only a slight tendency to connect the defendant with the offense." *Sons v. State*, 502 N.E.2d 1331, 1332 (Ind. 1987). Here, the bullet and blood exhibits were properly admitted because they legitimately tend to connect the defendant with the crime by way of reasonable inferences. See *Samaniego v. State*, 553 N.E.2d 120, 124 (Ind.1990); *Underwood v. State*, 535 N.E.2d 507, 517 (Ind.1989).

■ As for the .38 caliber bullets found at the home of Malone's girlfriend, the State demonstrated that the victim was killed with a .38 caliber bullet. Malone's girlfriend testified that he stayed at her home during the month of the murder, and that he was at her home on the day of the crime. She further testified that she did not own a gun or know from where the bullets came. The bullets were properly admitted because their caliber and location create a reasonable inference that Malone stored .38 caliber bullets at his girlfriend's house and then used some of them to load the gun with which he killed the victim.

■ Malone does not specify which of the five blood exhibits he thinks were wrongly admitted. The State offered samples of

blood from the sidewalk where the victim's body was found, the victim's body, Malone, and the station wagon that Malone drove near the time of the murder. All of these exhibits, however, were admissible as corroboration of the events constituting the crime: that Malone was at the scene, committed the murder, tried to stop the victim's bleeding, then drove away in the station wagon. *See Underwood*, 535 N.E.2d at 517 (court properly admitted photographs that corroborated testimony of the sequence of events that constituted the crime). The blood exhibits were properly admitted.

## II. Prosecutorial Misconduct

Malone claims that the State's misrepresentation about the unavailability of its DNA witness was prosecutorial misconduct that placed him in grave peril.

■ This Court has set out a two part test for reviewing prosecutorial misconduct claims. We consider first whether the prosecutor committed misconduct and second whether the alleged misconduct placed the defendant in a position of grave peril. *Robinson v. State*, 693 N.E.2d 548, 551 (Ind. 1998). " 'The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, rather than the degree of the impropriety of the conduct.' " *Id.* (quoting *Willoughby v. State*, 660 N.E.2d 570, 582 (Ind. 1996)).

The State apparently misrepresented to the trial court that its DNA expert was unavailable until late in the week, causing the court to permit a recess until the witness became available. It is unclear whether the trial court found that this misrepresentation amounted to prosecutorial misconduct. (*Compare* R. at 789 (where the court called the State's action prosecutorial misconduct) *with* R. at 939 (where the court commented that the action was not misconduct).) In any event, the trial court refused to exclude the testimony of the DNA expert on that ground, (R. at 789), but rather excluded the testimony on another basis.[1]

■ The DNA testimony could not have had any persuasive effect on the jury, because the jury was never allowed to hear it. Malone claims, however, that the prosecutor's misrepresentation prompted the court to admit other "blood evidence" on the basis that its connection to the defendant and to the crime would be established once the DNA evidence was admitted. As discussed above, the blood exhibits were properly admissible of their own accord, and they did not require the DNA testimony to establish their foundation or make them relevant. Therefore, the misrepresentation had no improper effect on the jury's decision, and did not place Malone in grave peril.

## III. Prejudicial Effect of the Autopsy Photograph

Malone objects to the admission of an autopsy photograph that shows an incision created by medical personnel, claiming that its gruesome nature substantially outweighs its probative value.

■ Autopsy photographs are admissible if (1) they provide relevant evidence, and (2) their probative value is not substantially outweighed by their tendency to impassion the jury against the defendant. *Edgecomb v. State*, 673 N.E.2d 1185, 1196 (Ind.1996), *reh'g denied.* Use of the photograph to illustrate the pathologist's testimony satisfies the initial relevancy requirement. *See Harrison v. State*, 644 N.E.2d 1243, 1256 (Ind.1995); Ind.Evidence Rule 401 (relevant evidence is evidence having *any* tendency to make the existence of a fact of consequence more or less likely). The question then becomes one of balancing probative value against prejudicial effect, and a trial court's ruling on this issue will not be disturbed absent an abuse of discretion. *Robinson v. State*, 693 N.E.2d 548 (Ind.1998).

■ The trial court exercised appropriate discretion here. The photograph is hardly gruesome; it simply depicts the wound that caused the victim's death and one incision made by medical personnel at the hospital. The State guarded against possible prejudice

---

1. The evidence was excluded on the basis that the testimony would solely have been based on an exhibit that was not properly admitted due to lack of a complete foundation. (R. at 802–04.)

resulting from the incision by requesting that the pathologist explain the origin of the wound. Malone was not prejudiced by the admission of the photograph.

Malone also claims that the photograph is cumulative, because another photograph, admitted without objection, depicted the wound. We note that the photographs are different. The undisputed photograph, State's Exhibit 49, depicts a close view of the wound, while the disputed photo, State's Exhibit 48, depicts the victim's upper body, giving a perspective on the location of the wound on the body. The photographs are not really cumulative, and they are not the stuff of reversible error.

### IV. Appointment of Commissioner Broyles as Judge Pro Tem

Malone challenges the substitution of a judge pro tempore, Master Commissioner Nancy Broyles, for the regular sitting judge, Judge Patricia Gifford.

Malone has made no argument, either at trial or on appeal, that Master Commissioner Broyles failed to satisfy the requirements for appointment of a pro tem set out in Indiana Trial Rule 63(C) or (E).

Instead, Malone cites a sentence in *Rogers v. State* in support of his contention that, in addition to the requirements of Rule 63, a specified level of "familiarity" is required of judges pro tem. 570 N.E.2d 906, 908 (Ind.1991) ("In addition, [the judge pro tem] was familiar with the case in that he heard the evidence at the post-conviction hearing."). That statement in *Rogers* was meant to suggest why the particular pro tem had been an appropriate choice; it was not intended to prescribe a requisite level of preparation for or understanding of a case. While the outer boundary of due process may require that a judge be "duly advised in the premises," the evidentiary arguments presented to the pro tem were such that the line was certainly not crossed here. Master Commissioner Broyles properly presided over Malone's trial.

### V. The Admission of Adams' Prior Inconsistent Statement

Malone contests the admissibility of statements that his sister Legina Adams made to a police officer shortly after the murder. At trial, counsel for Malone objected to use of her former inconsistent statements by saying that because she claimed that mental illnesses rendered her unable to remember all the questions she had answered earlier, he would be unable to "interrogate the witness thereon" effectively, citing the requirements of Evidence Rule 613(b).

On appeal, Malone argues that Ms. Adams' prior statements were hearsay. A party may not object on one ground at trial and seek reversal on appeal using a different ground. See *Grinstead v. State*, 684 N.E.2d 482, 486 n. 6. The issue is waived. *Id.*

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, SELBY and BOEHM, JJ., concur.