Andrew KING, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0810–CR–609.

Court of Appeals of Indiana.

June 30, 2009.

Rehearing Denied Aug. 7, 2009.

Timothy J. O'Connor, O'Connor & Auersch, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Andrew H. King appeals his convictions for two counts of class C felony child solicitation and one count of class D felony attempted dissemination of matter harmful to minors. We affirm.

### Issues

We reorder and restate the issues as follows:

I. Did the trial court abuse its discretion in admitting certain evidence?

II. Is impossibility a defense to the crime of attempted dissemination of matter harmful to minors?

III. Did the State establish the corpus delicti of the crimes?

### Facts and Procedural History

In October 2007, Indianapolis Metropolitan Police Detective Darin Odier conducted an online child solicitation investigation. Using a dedicated computer and DSL line located in the grand jury evidence room, Detective Odier created a Yahoo! member

account and profile for a fictitious fifteen-year-old female from Indianapolis named Jamie Lush with the screen name vollygirl1234. The profile included a photo of what appears to be an adolescent female in a white jacket, as well as this statement: "i'll be 16 in dec and get my license." State's Ex. 1.

On October 17, 2007, Detective Odier visited a Yahoo! chat room using the vollygirl 1234 screen name and waited for someone to make contact. Using the screen name king556466, King sent an instant message to vollygirl 1234. Posing as Jamie, Detective Odier asked King his age, sex, and location. King responded that he was a nineteen-year-old male from Indianapolis and asked the same question of Jamie, who responded that she was a fifteen-year-old female from Indianapolis. King told Jamie that he was "looking to meet" and asked if she had any photos. State's Ex. 8 (online chat transcript).[1] Detective Odier sent King additional photos of Jamie, and King sent Jamie several photos of himself and one of an exposed penis. King asked Jamie, "interested in meeting?" *Id.* Jamie asked, "what u wanna do?" *Id.* King responded, "what do you think[.]" *Id.* King asked Jamie if she liked his "pics[.]" *Id.* When she said "yes[,]" he replied, "so you want to see it for real and i wanto see yours[.]" *Id.*

Jamie asked if she could add King to her buddy list, which would allow her to view his profile and see when he was online. King agreed. His profile contained a photo and listed his name as Andrew and his age as twenty-six. State's Ex. 17. King told Jamie that his first name was "AAndrew" and asked, "where are we meeting[.]" State's Ex. 8. The two arranged to meet at a fast food restaurant on the west side of Indianapolis. King said that he would be driving a gray Honda. Jamie

said, "u no i havent had sex right[.]" *Id.* King replied, "not after tonight right? ? ?" *Id.* Jamie told King that she did not want to "get preg[.]" *Id.* King said, "I pull out[.]" *Id.* Jamie requested that King bring condoms, and he agreed. King gave Jamie his cell phone number and said, "i need to leave now if im going to get there .... bye[.]" *Id.* Detectives went to the restaurant but did not see King.

Approximately two and a half hours later, "Jamie" contacted King online. King asked, "what happen" and said that he arrived at the restaurant and saw "a lady there with kids and a cop that it[.]" *Id.* Jamie apologized and asked "can we talk again soon?" *Id.* King agreed. Jamie said that she would be out of town until Sunday night.

Another online chat between King and "Jamie" began at 6:00 p.m. on October 24, 2007. King said, "justy thinking of you wanted to try again" and suggested that "we could f* *k most of the night[.]" State's Ex. 18. King offered to meet Jamie at another fast food restaurant and asked, "do you give and like to get head[.]" *Id.* The chat broke off and resumed two hours later. King sent Jamie another photo of an exposed penis and said, "please sheck out the pic asn start masterbating to it[.]" *Id.* King asked Jamie, "So when can we get together and f* *k all day[.]" *Id.* Jamie told King that she had to go to school, and he responded, "what ever looks liek you do not want it[.]" *Id.* The conversation ended shortly thereafter.

Detective Odier used a Yahoo! program called Neda–Nema to archive the text of his instant message conversations with King in real time. Using programs called Camtasia and Snag–It, he was able to rec-

---

**1.** We have excerpted the transcript verbatim, including spelling and grammatical errors.

ord a video of the text and images that appeared on his computer screen during the conversations and "freeze" and take snapshots of the video at any given time. Tr. at 99. The State issued a subpoena to Yahoo! requesting information for user account king556466. Yahoo! submitted several documents, one of which was entitled "Yahoo! Account Management Tool" and listed "Mr Andrew King" from Indianapolis as the user of the "Login Name" king556466. State's Ex. 2. Another document, entitled "Yahoo! Login Tracker," listed the internet protocol ("IP") address of the computer that had been used to send the instant messages to vollygirl1234. The State determined that Integrated Business Communications ("IBC") provided internet service to that IP address. The State issued a subpoena to IBC, which submitted a letter indicating that the IP address was used by Crossroads Bible College in Indianapolis. State's Ex. 3.

Detective Odier searched the Bureau of Motor Vehicles records and found "an Andrew King whose picture matched the pictures that were sent during the online chats." Tr. at 150. He also determined that King was currently a student at Crossroads Bible College. On January 24, 2008, Detective Odier visited the college with a search warrant for King's person and property. He found King alone in a classroom and read him the search warrant. Detective Odier took King to a conference room, read him his Miranda rights, and conducted a taped interview, during which King made incriminating statements.

On January 25, 2008, the State charged King with two counts of class C felony child solicitation and one count of class D felony attempted dissemination of matter harmful to minors. On September 3, 2008, a jury found him guilty as charged.

## Discussion and Decision

### I. Admission of Evidence

King contends that the trial court erred in admitting certain evidence. Our standard of review is well settled:

> The admission of evidence is within the trial court's discretion, and its decisions are only reviewed for an abuse of that discretion. An abuse of discretion occurs if a decision clearly is against the logic and effects of the facts and circumstances before the court or if the court has misinterpreted the law. If the trial court abuses its discretion in admitting evidence, the defendant is not entitled to a new trial unless he or she demonstrates that the improperly admitted evidence contributed to his or her verdict.

*State v. Seabrooks*, 803 N.E.2d 1190, 1193 (Ind.Ct.App.2004) (citations omitted). We address each of King's contentions in turn.

### A. State's Exhibit 2

King first contends that the trial court abused its discretion in admitting State's Exhibit 2, which consists of four documents that Yahoo! submitted pursuant to a subpoena. The first document is a letter from paralegal Darcy Riedell, which reads in pertinent part:

> Enclosed is the following information regarding the user account specified in the Subpoena: 1) the User Profile, as produced by the Yahoo! Account Management Tool; and 2) the dates, times and Internet Protocol ("IP") addresses for log-in attempts for the Yahoo! account specified in the Subpoena to the extent available from our system for the specified date range. An affidavit authenticating these records also is enclosed.
>
> . . . .

*Because Yahoo! offers many of its user services for free, it may not require or verify user information.*

State's Ex. 2 (emphasis added).

The second document is Riedell's affidavit, which reads in pertinent part:

1. I am a Custodian of Records for Yahoo! Inc. ("Yahoo!"), located in Sunnyvale, California. I am authorized to submit this affidavit on behalf of Yahoo! I make this affidavit pursuant to the Federal Rules of Evidence Rule 902(11) and in response to a Subpoena dated October 23, 2007. I have personal knowledge of the following facts, except as noted, and could testify competently thereto if called as a witness.

2. Attached hereto are true and correct copies of data pertaining to the Yahoo! subscriber identified in the Subpoena. Yahoo! servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted, and this data is kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice. Yahoo! provides most of its services to its subscribers free of charge. *As such, Yahoo! does not collect billing information or verified personal information from the majority of our users.*

*Id.* (emphasis added).

The third document is entitled "Yahoo! Account Management Tool" and reads in pertinent part:

| | |
|---|---|
| Login Name: | king556466 |
| Properties Used: | Mail |
| | Personals |
| | Photos |
| Yahoo Mail Name: | king556466@yahoo.com |
| (Alternate) Email address: | King556466@hotmail.com |
| Registration IP address: | 207.250.21.33 |
| Account Created (reg): | Tue Feb 28 18:34:52 2006 GMT |
| Other Identities: | king556466 (Yahoo! Mail) |
| Full Name | Mr Andrew King |
| Address1: | |
| Address2: | |
| City: | Indianapolis |
| State, territory or province: | IN |
| Country: | United States |
| Zip/Postal Code: | 46201 |

*Id.* The fourth document is entitled "Yahoo! Login Tracker" and indicates that the user of account king556466 logged in using IP address 207.67.99.130 on October 17 and 24, 2007.

At trial, both parties agreed that State's Exhibit 2 contains hearsay, which is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c).[2] "Hearsay is not admissible except as provided by law or by [the rules of evidence]." Ind. Evidence

**2.** Regarding the "Yahoo! Account Management Tool," the prosecutor stated, "[T]he only purpose we're offering it for is this is what we got from Yahoo." Tr. at 69. In our view, the State clearly offered the document as tending to prove that someone named Andrew King created the Yahoo! account that was used to solicit sex from and disseminate matter harmful to someone who appeared to be a fifteen-year-old female. *See U.S. v. McIntyre,* 997 F.2d 687, 699 n. 9 (10th Cir.1993) (discussed *infra), cert. denied* (1994).

Rule 802. The State asserted that State's Exhibit 2 was admissible pursuant to Indiana Evidence Rule 803, which reads in pertinent part,

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness.
>
> . . . .
>
> (6) Records of Regularly Conducted Business Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

King objected, contending that the documents lacked trustworthiness. The trial court overruled the objection and admitted State's Exhibit 2.

■ On appeal, King renews his argument that the "source of information or the method or circumstances of preparation [of State's Exhibit 2] indicate a lack of trustworthiness." Appellant's Br. at 22.[3] We agree. No Indiana cases are directly on point, but we find persuasive federal cases cited by King regarding the admissibility of guest registration cards.[4] In *U.S. v. McIntyre*, 997 F.2d 687 (10th Cir.1993), *cert. denied* (1994), the Tenth Circuit Court of Appeals reviewed the district court's admission of two motel registration cards that the prosecution introduced to support its theory that one of the appellant's co-conspirators traveled to California to purchase cocaine. As a threshold matter, the court noted that "[t]he government offered these documents for the truth of the matter asserted, namely that Vickie Hogg checked into the two motels on the dates recorded and paid for the rooms. Accordingly, they are hearsay." *Id.* at 699. In a footnote, the court stated,

> We find no distinction between offering the evidence to prove that Vickie Hogg herself checked into the motel, or second, offering the document to prove that someone claiming to have the same name as [ ] Vickie Hogg checked into the motel. In either event, the document would be introduced for the purpose of showing that someone using the name Vicki Hogg had checked into the motel. That is the assertion on the registration cards and it was made out of court. Hence, it is hearsay.

*Id.* at n. 9.[5]

Regarding the admission of documents from the Magic Carpet Motel, the *McIn-*

---

3. King contends for the first time on appeal that even if Riedell's letter "were a business record, it would not be admissible because it was not authenticated." Appellant's Br. at 19, 21. "A party may not object on one ground at trial and seek reversal on appeal using a different ground." *Malone v. State*, 700 N.E.2d 780, 784 (Ind.1998). As such, this contention is waived. *Id.*

4. Aside from its mention of an affidavit, Indiana Evidence Rule 803(6) is identical to its federal counterpart.

5. As contrary authority for this proposition, the *McIntyre* court cited *U.S. v. Lieberman*, 637 F.2d 95 (2nd Cir.1980). Lieberman was convicted of conspiracy to distribute and to possess with intent to distribute over one ton of marijuana that was shipped from his offices in Fort Lauderdale, Florida, to Brooklyn, New York. On December 2, 1978, Robert D'Ambra was arrested while unloading the marijuana from a Lieberman Movers van in Brooklyn. On appeal, Lieberman claimed that the district court erred in admitting a guest registration card from a hotel in Miami

*tyre* court noted that the appellant had failed to make a proper objection at trial and therefore reviewed the district court's ruling for plain error. *Id.* at 699. We find the analysis instructive and quote from it at length:

> The owner of the Magic Carpet Motel testified that the log was kept in the regular course of business. However, the owner also testified that an employee of the motel filled in the log based on information received from the guest. Because the motel employee relied on information received from the guest in compiling the log, the record poses a hearsay problem.

> The essential component of the business records exception is that each actor in the chain of information is under a business duty or compulsion to provide accurate information. *See 2 McCormick on Evidence,* § 290 at 274 (John William Strong, ed., 4th ed.1992) (stating that the underlying theory of the business records exception is "a practice and environment encouraging the making of accurate records. If any person in the process is not acting in the regular course of business, then an essential link in the trustworthiness chain fails, just as it does when the person feeding the information does not have firsthand knowledge.")[.]

In order for the business records exception to apply, Rule 803(6) requires "an informant with knowledge acting in the course of the regularly conducted activity." Fed.R.Evid. 803(6), Advisory Committee Notes on 1972 Proposed Rules. The notes of the Advisory Committee on the 1972 Proposed Rules state:

> Sources of information presented no substantial problem with ordinary business records. All participants, including the observer or participant furnishing the information to be recorded, were acting routinely, under a duty of accuracy, with employer reliance on the result, or in short "in the regular course of business." If, however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail. An illustration is the police report incorporating information obtained from a bystander: the officer qualifies as acting in the regular course but the informant does not. The leading case, *Johnson v. Lutz,* 253 N.Y. 124, 170 N.E. 517 (1930), held that a report thus prepared was inadmissible. Most of the authorities have agreed with the decision.

In the instant case, the motel clerk relied on the guest, who was not under a business duty or compulsion, to provide the information that went into the docu-

Beach, Florida, "showing that someone using the name and address of Robert D'Ambra had registered as a guest at 9:44 p.m. on November 27, 1978[.]" *Id.* at 99. The Second Circuit Court of Appeals noted that the prosecution failed to establish that the hotel had verified the identity of the guest and therefore determined that the registration card filled out by the guest "was not properly admitted as a business record to prove that it was in fact the Robert D'Ambra who had been at Lieberman's offices earlier in the day, and

who was the guest at the hotel." *Id.* at 101 (footnote omitted). The court concluded, however, that the card was "admissible as non-hearsay, simply to show that someone calling himself Robert D'Ambra registered in the hotel, laying a foundation for further evidence that from his room a call was made to Myron Lieberman's unpublished telephone number." *Id.* (citation omitted). We believe that McIntyre more closely parallels the facts of this case.

ment. Therefore, the document presents hearsay problems.

However, the fact that the name on the registration was obtained from an actor not under a business compulsion does not necessarily mean the business records exception is inapplicable. If the business entity has adequate verification or other assurance of accuracy of the information provided by the outside person, the exception may still apply. Some courts have required that the business employee recording the information be "able in some way to verify the information provided-for example, by examining a credit card, driver's license, or other form of identification." *United States v. Lieberman*, 637 F.2d 95, 101 (2d Cir.1980); *see United States v. Zapata*, 871 F.2d 616, 625 (7th Cir.1989); [6] 2 *McCormick on Evidence* § 290 at 275. We do not feel that in every case there must be direct testimony that an employee actually verified the information, nor is it necessary that there be an express policy that identification be

checked. In some cases, the interests of the business may be such that there exists a sufficient self-interest in the accuracy of the log that we can find its contents to be trustworthy. *See FDIC v. Staudinger*, 797 F.2d 908, 910 (10th Cir.1986) (" '[a] foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court.' ") (*quoting Weinstein's Evidence* ¶ 803(6)[02] at 803–179 to –181 (1985)); *Manufacturers and Traders Trust Co. v. Goldman (In re Ollag Constr. Equip. Corp.)*, 665 F.2d 43, 46 (2d Cir.1981) (finding information on financial statements provided to a bank in the regular course of the bank's business to be sufficiently trustworthy to qualify as business records, in part because providing of false information under such circumstances is subject to criminal sanctions; the court contrasted such information to that provided by hotel guests, where there is no similar indicia of reliability). However, in the instant case we do not find adequate

---

**6.** In *Zapata,* the appellant claimed that "the district court erred in admitting guest registration records of the Hyatt Regency [where he stayed while facilitating a cocaine deal] on grounds that the records were inadmissible hearsay, since they were not filled out by employees, but rather, by the guests themselves." 871 F.2d at 625. The Seventh Circuit Court of Appeals addressed the issue as follows:

> In applying the business records exception of the hearsay rule to hotel guest registrations, the inquiry is not controlled by the status of the recording person as a hotel employee or a guest. Rather, the key to satisfying [Federal Evidence] Rule 803(6) in this context is whether an employee was "able in some way to verify the information provided-for example, by examining a credit card, driver's license, or other form of identification." *United States v. Lieberman,* 637 F.2d 95, 101 (2d Cir.1980). "[I]f such verification is obtained by the employee, we see no reason why the guest card that has been filled in by the

guest himself would not qualify as a business record and thus be admissible for the truth of its statements." *Id.; see also United States v. Saint Prix,* 672 F.2d 1077, 1084 (2d Cir.) (hotel registration cards filled out by guests admitted when government showed sufficient corroboration of card information), *cert. denied,* 456 U.S. 992, 102 S.Ct. 2274, 73 L.Ed.2d 1287 (1982).

Here, the executive assistant manager of the Hyatt Regency testified that it was the Hyatt's standard practice to verify the information provided. In light of this evidence of the hotel's usual business procedure, *see Lieberman,* 637 F.2d at 101, and the independent evidence corroborating Mr. Zapata's June stay at the hotel, *see Saint Prix,* 672 F.2d at 1084, the requirements of Rule 803(6) were satisfied. Thus, we cannot say that the district court abused its discretion in admitting into evidence the Hyatt Regency's hotel records regarding the registration of Mr. Zapata as a guest on June 28 and 29, 1987.
*Id.* at 625–26 (footnotes omitted).

guarantees of trustworthiness in the financial self-interests of the motel. Moreover, there was no evidence either that the identity of the individual claiming to be Vickie Hogg was actually checked or that there was a policy to do so. Nor do we find it persuasive that a motel employee transcribed the information rather than the guest.[FN12]

---

[FN12] The courts in *Lieberman,* 637 F.2d at 100–101, and *Zapata,* 871 F.2d at 625, rejected the notion that the admissibility of a document under the business records exception of Fed.R.Evid. 803(6) was controlled by whether the recording person was a guest or employee of the hotel. Indeed, although we feel that this is one factor to consider in determining the trustworthiness of the source or method of preparation, it is not determinative. Whether the guest tells the clerk his name and address and the clerk then writes it down or whether the guest writes the information down, the guest is still the source of the information. Accordingly, an examination of the source, method, and circumstances of preparation is necessary regardless of who transcribes the information.

*Id.* at 699–700. The court concluded that "[a]lthough the admission of the Magic Carpet log may have been erroneous, we nevertheless are not convinced that it amounted to plain error." *Id.* at 701.

As for the admission of a "registration card and folio receipt from the Villa Viejo Motel[,]" the *McIntyre* court noted that

[t]he office manager of the motel testified that those records were kept in the normal course of business, and that, although a portion of the registration card was filled out by a guest, the motel enforced a policy of verifying the identity of guests by examining driver's licenses. Consequently, we find that the Villa Viejo records were properly admitted under the business records exception to the hearsay rule.

*Id.* (citing *Lieberman* and *Zapata* ) (footnote omitted).

In this case, both the cover letter and the affidavit in State's Exhibit 2 plainly state that Yahoo! generally does not collect or verify personal information from its users. More to the point, they do not state that Yahoo! verified the personal information obtained from the person who created user account king556466. King observes that Detective Odier himself reated a fictitious Yahoo! account and acknowledged that Yahoo! "doesn't require you to give any identification when you're creating an account[.]" Tr. at 163–64. In light of these considerations, we conclude that "the source of information or the method or circumstances of preparation [of State's Exhibit 2] indicate a lack of trustworthiness" and that the trial court abused its discretion in admitting the exhibit pursuant to Indiana Evidence Rule 803(6).[7] We

---

7. *See Stahl v. State,* 686 N.E.2d 89 (Ind.1997). Stahl was charged with defrauding a financial institution and theft after he made unauthorized withdrawals from his friend Johnson's checking account. Pursuant to Indiana Evidence Rule 803(6), the trial court admitted an affidavit that Johnson completed at the behest of Thomas, the bank manager, stating that he did not withdraw, authorize the withdrawal of, or benefit from the withdrawal of the funds from his account. Stahl was convicted and challenged the admissibility of the affidavit on appeal. Our supreme court addressed the issue in pertinent part as follows:

The hearsay rule is designed to forbid unreliable out of court statements offered to

prove the truth of the matter asserted. The business records exception permits records of business activity to be admitted in circumstances when the recorded information will be trustworthy. The reliability of business records stems from the fact that the organization depends on them to operate, from the sense that they are subject to review, audit, or internal checks, from the precision engendered by the repetition, and from the fact that the person furnishing the information has a duty to do it correctly. None of these is present in the case of a report that simply accepts information from a source that is not itself acting in the

address below whether that error was harmless.

### B. State's Exhibit 3

■ Next, King asserts that the trial court abused its discretion in admitting State's Exhibit 3, which consists of two documents submitted by IBC pursuant to a subpoena. The first document, printed on IBC's letterhead, reads in pertinent part as follows:

> In response to [the subpoena] dated November 29, 2007 and faxed to our office requesting subscriber information for IP (Internet Protocol) address 207.67.99.130.
>
> Integrated Business Communications provides dedicated Internet T–1 service to the following end user customer utilizing the address noted above:
>
> Crossroads Bible College [street address]
>
> [phone and fax numbers]
>
> . . . .
>
> This information is being provided from the records we have on file and is in good faith believed to be accurate. . . .
>
> /s/
>
> Sean Shepard, President
>
> Integrated Business Communications

State's Ex. 3.

The second document is a notarized form that reads in pertinent part as follows:

## CERTIFICATION OF BUSINESS RECORDS

(Records of Regularly Conducted Business Activity—Indiana Rules [sic] of Evidence 803(6))

I, *Sean Shepard, President* [title] of *Integrated Business Comm., Inc.* [business or entity], swear or affirm under the penalties for perjury this 2nd day of *Sept,* 2008, that the attached are true and accurate copies of the business records of *Integrated Business Comm., Inc.* [business or entity] and that these records are [sic]:

1.  Were made at near [sic] the time of the occurrence of the matters set forth, by or from information transmitted by a person with knowledge of these matters;

2.  Are kept in the course of the regularly conducted activities of *Integrated Business Comm., Inc.* [business or entity];

3.  And were made by the regularly conducted activity as a regular practice of *Integrated Business Comm., Inc.* [business or entity].

FURTHER AFFIANT SAYETH NOT. *Id.*

At trial, the State asserted that the exhibit was admissible pursuant to Evidence Rule 803(6). Defense counsel objected, "[I]t may be in response to a subpoena but that is not a record of regularly conducted

course of a regular activity. This case illustrates the point. The bank required Thomas to obtain the affidavit from Johnson before it would reimburse him or allow him to watch the videotape [showing Stahl withdrawing funds from the bank's ATM]. Thomas had the duty to report information, but she had no personal knowledge, apart from what Johnson told her, as to whether Johnson authorized or benefitted from the ATM transactions. She merely reported what Johnson said in the affidavit, without

any basis for evaluating the truth of the matter asserted. The affidavit might be admissible to show, for example, the timing of Johnson's report to Thomas, but it is hearsay as to the facts reported. In short, because Thomas did not have personal knowledge of the information in the affidavit, and Johnson was not acting in any regularly conducted business activity, the requirements of Rule 803(6) were not met.
*Id.* at 92.

business activity. This would not be in their record." Tr. at 78.[8] King renews this argument on appeal. We agree with the State that King misapprehends the "regularly conducted business activity" requirement of Indiana Evidence Rule 803(6).

In *United States v. Loney*, 959 F.2d 1332 (5th Cir.1992), the appellant challenged the admissibility of a compilation of computer records of approximately seventy airline customer accounts on the basis that it "was not 'kept in the course of a regularly conducted business activity' because it was made 'in anticipation of litigation.'" *Id.* at 1340. The Fifth Circuit Court of Appeals stated,

> [Federal Evidence] Rule 803(6) does not require that the *summary* of the data be kept in the regular course of business. Rather, it is the underlying data that must be so kept. And Loney does not challenge the government's foundation for admitting the underlying data. Once the underlying data is admissible under the business records exception, a summary of that data can be admitted under Fed.R.Evid. 1006, which permits the parties to present a "chart, summary, or calculation" where "[t]he contents of voluminous writings ... cannot conveniently be examined in court." Thus, the

district court properly admitted [the exhibit] under rules 803(6) and 1006.

*Id.* at 1340–41 (footnote omitted).

Here, King did not challenge the State's foundation for admitting the data underlying the information in the letter submitted by IBC. As such, we find no abuse of discretion in the trial court's admission of State's Exhibit 3.

### C. State's Exhibits 6, 7, 8, 15, 16, 17, and 18

■ King further contends that "[i]t was only through Exhibit 2 that the State was able to connect [him] to the king556466 screen name" and that because State's Exhibit 2 was erroneously admitted, seven other exhibits [9] linking him to the charged crimes were erroneously admitted. Appellant's Br. at 33.[10] King cites no authority to support this contention and therefore has waived this issue. *See Lampitok v. State*, 817 N.E.2d 630, 638 (Ind.Ct.App.2004) (finding argument waived for failure to cite supporting authority) (citing, *inter alia*, Ind. Appellate Rule 46(A)(8)(a)), *trans. denied* (2005).

■ Waiver notwithstanding, we note that King admitted to Detective Odier that he had created the Yahoo! profile with the identifier king556466 and that the profile contained "basic information" regarding

---

**8.** King argues for the first time on appeal that the letter from IBC should have been excluded on the basis that Indiana Evidence Rule 1002 "requires that the original records be admitted into evidence[.]" Appellant's Br. at 31; *see* Ind. Evidence Rule 1002 ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute."). Because King did not raise this objection at trial, this argument is waived. *See Malone*, 700 N.E.2d at 784.

**9.** State's Exhibit 6 is a printout of King's initial contact with "Jamie" as seen on Detective Odier's computer monitor. Exhibit 7 is a

DVD containing a video of the online chats between King and Jamie. Exhibit 8 is the text of the October 17 online chat. Exhibit 15 is a printout of the photo of the exposed penis that King sent Jamie during that chat. Exhibit 16 is a printout of King's request to add Jamie to his buddy list. Exhibit 17 is a printout of King's Yahoo! profile. Exhibit 18 is the text of the October 24 online chat.

**10.** King makes the same argument regarding State's Exhibit 3. Because we have concluded that the trial court did not abuse its discretion in admitting the exhibit, we need not address that argument.

him, including his photo, age, and first name. State's Ex. 22 at 8 (transcript of interview). Also, Detective Odier searched the Bureau of Motor Vehicles records and found "an Andrew King whose picture matched the pictures that were sent during the online chats." Tr. at 150. Because the State was able to link King to screen name king556466 through evidence other than Exhibit 2, we find no abuse of discretion in the admission of the seven other exhibits. Also, we note that King does not argue that the admission of Exhibit 2 prejudiced him in any other manner. Thus, we conclude that the admission of State's Exhibit 2 was harmless error.

## II. Impossibility as Defense to Attempted Dissemination of Matter Harmful to Minors

King was convicted of attempting to commit the crime of dissemination of matter harmful to minors, which Indiana Code Section 35–49–3–3 defines in pertinent part as follows:

(a) Except as provided in subsection (b), a person who knowingly or intentionally:

(1) disseminates matter to minors that is harmful to minors;

....

commits a Class D felony.

(b) This section does not apply if a person disseminates, displays, or makes available the matter described in subsection (a) through the Internet, computer electronic transfer, or a computer network unless:

....

(3) the person distributes the matter to a child less than eighteen (18) years of age believing or intending that the recip-

ient is a child less than eighteen (18) years of age.

Indiana Code Section 35–41–5–1 defines "attempt" in pertinent part as follows:

(a) A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. . . .

(b) *It is no defense that, because of a misapprehension of the circumstances, it would have been impossible for the accused person to commit the crime attempted.*

(Emphasis added.)

The State alleged that King attempted to disseminate matter harmful to minors by sending "a photograph of exposed male genitalia, through the Internet or by use of a computer network, to a person [he] believed to be a child less than eighteen (18) years of age[.]" Appellant's App. at 46 (charging information).[11] King argues,

when a computer is used to disseminate the matter, the State must prove that the person distributed the matter to a child less than eighteen years of age and that he believed or intended that the recipient be a child less than eighteen. Here, while King may have believed that the intended recipient was less than eighteen, the State did not prove that the person was actually less than eighteen, as required by the plain language of the statute.

This issue was addressed directly by the Court of Appeals . . . in the case of *Gibbs v. State,* 89[8] N.E.2d 1240 (Ind. Ct.App.2008)(reh'g denied 3/2/09). There, as here, Gibbs was convicted of attempted dissemination of matter harmful to a minor after being netted in

---

**11.** King does not contend that a photo of an exposed penis is not "matter harmful to mi- nors" as contemplated by Indiana Code Section 35–49–3–3.

an internet police sting virtually identical to the sting in this case. *Id.* at 1241.[12] His conviction was reversed on appeal, however, because the Court of Appeals recognized that the plain language of section (a)(3) requires that the actual recipient of the allegedly harmful matter be under the age of eighteen. *Id.* at 1245. Because the recipient was a police detective and was not, therefore, younger than eighteen, the Court concluded that the evidence was insufficient to support Gibbs's conviction for attempted dissemination of matter harmful to minors. *Id.* The same result obtains here, and, therefore, King's conviction for attempted dissemination of matter harmful to minors must be reversed. *Id.*

Appellant's Br. at 12. We agree with the State that *Gibbs* was incorrectly decided and that King's conviction must be affirmed.

The majority's analysis in *Gibbs* reads in pertinent part as follows: [13]

> Gibbs contends that pursuant to *Aplin v. State*, 889 N.E.2d 882 (Ind.Ct.App. 2008), *reh'g denied, trans. denied,*[14] he cannot be convicted of attempted sexual misconduct with a minor and attempted dissemination of matter harmful to minors because the target of these offenses was not a minor. In *Aplin*, the defendant, Matthew Aplin, had online conversations with a detective from the Fishers Police Department who was posing as a fifteen-year-old girl with the screen name glitterkatie2010. Aplin expressed his desire to have sex with "Katie" and arranged to meet her at a Starbucks inside a Super Target. Aplin drove to

Super Target and looked inside the Starbucks. Aplin was then arrested and eventually found guilty of attempted sexual misconduct with a minor and child solicitation.

> We affirmed Aplin's child solicitation conviction but reversed his attempted sexual misconduct with a minor conviction. In our analysis, we began by noting a difference between the offenses of sexual misconduct with a minor and child solicitation: the former requires that the victim be a child while the latter may be established if the defendant "believes" the victim to be a child. *Compare* Ind.Code § 35–42–4–9 [FN6] with Ind. Code § 35–42–4–6 [FN7]

> [FN6] Ind.Code § 35–42–4–9(a)(*l*) ("A person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits sexual misconduct with a minor, a Class C felony. However, the offense is ... a Class B felony if it is committed by a person at least twenty-one (21) years of age....").

> [FN7] Ind.Code § 35–42–4–6(c) ("A person at least twenty-one (21) years of age who knowingly or intentionally solicits a child at least fourteen (14) years of age but less than sixteen (16) years of age, or an individual the person believes to be a child at least fourteen (14) years of age but less than sixteen (16) years of age, to engage in: (1) sexual intercourse; (2) deviate sexual conduct; or (3) any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person; commits child solicitation, a Class D felony. However, the offense is a Class C felony if it is committed by using a computer network....["] ).

> [The *Aplin* court] then concluded that attempted sexual misconduct with a minor

---

12. In fact, Detective Odier conducted the sting in *Gibbs*.

13. Our supreme court denied transfer in *Gibbs* on May 14, 2009. Justice Dickson voted to grant transfer.

14. Justices Dickson and Sullivan voted to grant transfer in *Aplin*.

also requires that the intended victim be a minor:

> The State charged that Aplin violated that statutory provision [sexual misconduct with a minor] when he attempted to engage in deviate sexual conduct with Dan Claasen.[FN8] If proven, this did not constitute the offense of attempted Sexual Misconduct with a Minor, because Detective Claasen is an adult. This conviction must be reversed due to insufficient evidence. As discussed below, the appropriate charge in these circumstances is that of Child Solicitation, whereby the State need not prove the actual age of the victim but may prove the solicitor's belief that the solicitee is a minor.

*Aplin*, 889 N.E.2d at 884–85 (footnote omitted).

[FN8] We acknowledge that in *Aplin*, the charging information alleged that Aplin "attempted to engage in sexual conduct with a specified adult, not that Aplin attempted to engage in sexual misconduct with a child but it was impossible to do so because of his misapprehension of the circumstances." *Aplin*, 889 N.E.2d at 884 n. 4. The *Aplin* Court then cited the statute that provides that impossibility is not a defense to a crime. *Id.* We find that the differences in the wording of the charging informations in *Aplin* and this case do not affect the outcome of this case because the intended victim here was, in fact, an adult.

Gibbs argues that *Aplin* requires reversal of his conviction for attempted sexual misconduct with a minor because the State alleged he attempted to have sexual intercourse with a person he believed to be fifteen years old but who was actually an adult. He further argues that the reasoning of Aplin applies to his conviction for attempted dissemination of matter harmful to minors because that statute also does not contemplate a victim believed to be a minor. *See* Ind.Code § 35–49–3–3. We first address Gibbs' conviction for attempted sexual misconduct with a minor.

The State concedes *Aplin* is on point but argues it was incorrectly decided. We, however, believe that *Aplin* was correctly decided. This is especially so since the Indiana Supreme Court denied transfer in Aplin on December 4, 2008.[15] If our General Assembly wanted to penalize defendants for attempting to commit the offense of sexual misconduct with a minor when the victim is an adult the defendant believed to be fourteen or fifteen years old, it could have chosen statutory language similar to that it used in the child solicitation statute, that is, "an individual the person believes to be" a child at least fourteen but less than sixteen years old. *See* I.C. § 35–42–4–6. However, our General Assembly did not do so. Pursuant to *Aplin*, the evidence is insufficient to support Gibbs' conviction for attempted sexual misconduct with a minor.

As for Gibbs' conviction for attempted dissemination of matter harmful to minors, . . . . [i]f, like in this case, matter is disseminated via Internet or computer, [Indiana Code Section 35–49–3–3(b)(3)] imposes two additional requirements: (1) the recipient must be less than eighteen years old and (2) the person must

15. In her dissent in *Gibbs*, Judge May observed,

> Denial of transfer has no precedential value or legal effect other than to terminate the litigation between the parties, and does not necessarily indicate the Supreme Court's agreement with this court's opinion. *Wishard Memorial Hosp. v. Kerr*, 846 N.E.2d 1083,

1088 n. 1 (Ind.Ct.App.2006). *See Ludy v. State*, 784 N.E.2d 459, 460 (Ind.2003), where our Supreme Court unanimously adopted a new rule of law one year after it had denied transfer in a case presenting precisely the same argument.
898 N.E.2d at 1247 n. 1 (May, J., dissenting).

believe or intend the recipient to be less than eighteen years old. Because the actual recipients here, Detectives Odier and Anderson, were not less than eighteen years old, pursuant to the reasoning in *Aplin,* there was never an opportunity for the first requirement to be met.[16] Once again, we note that our General Assembly did not use language in this statute similar to that it used in the child solicitation statute. The evidence is insufficient to support Gibbs' conviction for attempted dissemination of matter harmful to minors.

898 N.E.2d at 1243–45 (some footnotes omitted).

Judge May dissented, agreeing with the State that *Aplin* had been wrongly decided:

Although an actual child victim is required for a conviction of the completed offense of sexual misconduct with a minor, *Aplin* did not adequately explain why an actual child is an element of an attempt offense or cite any authority in support of that proposition.

The majority, agreeing with *Aplin,* views the difference between the sexual misconduct with a minor statute and the child solicitation statute as a policy decision by the General Assembly not to penalize a person for attempting to engage in sexual misconduct with someone who is not a minor. However, the attempt statute applies to all offenses except crimes of recklessness, *Anthony v.*

*State,* 274 Ind. 206, 409 N.E.2d 632, 636 (Ind.1980), and that statute provides that impossibility is not a defense. Ind. Code § 35–41–5–1(b) [FN2]

FN2 The majority does not acknowledge the abrogation of the impossibility defense in Ind. Code § 35–41–5–1(b). Aplin mentioned it in a footnote:

The State alleged that Aplin attempted to engage in sexual conduct with a specified adult, not that Aplin attempted to engage in sexual misconduct with a child but that it was impossible to do so because of his misapprehension of the circumstances. It is no defense that, because of misapprehension of the circumstances, it would have been impossible for the accused to commit the crime attempted. Ind.Code § 35–41–5–1(b).

889 N.E.2d 882, 884 n. 4 (Ind.Ct.App. 2008), *reh'g denied.* Thus, *Aplin* appears to acknowledge that impossibility is not a defense, but faults the State for the language of the charging instrument. However, any time a defendant fails to complete an offense because it is impossible, the State will be unable to allege facts that would ordinarily constitute an offense. "[T]he purpose of a charging instrument is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense." *Brown v. State,* 830 N.E.2d 956, 963 (Ind.Ct.App.2005). The *Aplin*

---

16. In the instant case, the State argues,

Gibbs' novel introduction of "opportunity" into the law of attempt actually results in abolishing attempts altogether. One may note that the statute defining any crime requires proof of given elements. A panel following *Gibbs* would have to include every element of the target offense in the proof required for attempt, because only the ability to achieve every element can constitute *Gibbs'* "opportunity" to accomplish the target crime.

*Gibbs,* 898 N.E.2d at 1245. One must ask what difference *Gibbs* leaves between a defendant who believes he is disseminating obscene matter to a minor who is actually a police officer, and a defendant who wrongly believes that the incorrect proportions of fuel oil and ammonium nitrate he has mixed will explode. In both cases, there is no "opportunity" for the intended final result to occur.
Appellee's Br. at 15 n. 5.

panel did not suggest the wording used by the State failed to apprise Aplin of the charges against him.

*Id.* at 1247 (May, J., dissenting).

Judge May then quoted our supreme court's interpretation of Indiana Code Section 35–41–5–1:

> It is clear that section (b) of our [attempt] statute rejects the defense of impossibility. It is not necessary that there be a present ability to complete the crime, nor is it necessary that the crime be factually possible. *When the defendant has done all that he believes necessary to cause the particular result, regardless of what is actually possible under existing circumstances, he has committed an attempt.* The liability of the defendant turns on his purpose as manifested through his conduct. If the defendant's conduct, in light of all the relevant facts involved, constitutes a substantial step toward the commission of the crime and is done with the necessary specific intent, then the defendant has committed an attempt.
>
> Previous Indiana cases have sometimes narrowly interpreted an attempt as conduct " 'which will apparently result in the crime, unless interrupted by circumstances independent of the doer's will.' " However, the new statute shows that this interpretation focusing on the result of the conduct is no longer applicable and that the law now focuses on the substantial step that the defendant has completed, not on what was left undone.

*Zickefoose v. State,* 270 Ind. 618, 388 N.E.2d 507, 510 (Ind.Ct.App.1979) (emphasis added and citations omitted).

Gibbs intended to have sex with a fifteen-year-old. He did all he believed was necessary to complete the offense of sexual misconduct of [sic] a minor, and he failed to complete the offense only

because it was not possible under the circumstances.

Our court presumes the General Assembly is aware of existing rules of law when it enacts a statute. *Gallagher v. Marion County Victim Advocate Program, Inc.,* 401 N.E.2d 1362, 1365 (Ind. Ct.App.1980). In light of the law existing when the sexual misconduct with a minor statute was enacted, I conclude the General Assembly could not have intended to foreclose prosecution under the sexual misconduct with a minor statute when the defendant erroneously believes the victim is a minor. Instead, its intent was that the State would have to proceed under attempt law and prove a substantial step, whereas an outright conviction of child solicitation would be possible under the same circumstances. Therefore, I would not apply Aplin to reverse Gibbs' convictions of attempted sexual misconduct with a minor and attempted dissemination of matter harmful to minors.

*Id.* at 1248 (May, J., dissenting) (alterations added).

■ We agree with Judge May that impossibility is not a defense to the crime of attempted dissemination of matter harmful to minors and believe that the legislature could not have intended to foreclose prosecution under Indiana Code Section 35–49–3–3 when the defendant erroneously believes the victim is a minor. Both Indiana Code Section 35–41–5–1(b) and our supreme court's interpretation of the statute in *Zickefoose* support this conclusion. Here, King intended to send a photo of an exposed penis to a fifteen-year-old via the internet and did all he believed was necessary to complete the offense of dissemination of matter harmful to minors. He failed to complete the offense only because it was impossible under the circumstances, i.e., because Detective Odier was not a

minor. Consequently, we affirm his conviction for attempting that crime.

### III. Corpus Delicti

 Finally, King invokes the corpus delicti rule and argues that, aside from his statement to Detective Odier, the State presented no admissible evidence that he committed the charged crimes, and thus the trial court abused its discretion in admitting his statement. As we explained in *Shanabarger v. State*, 798 N.E.2d 210 (Ind. Ct.App.2003), *trans. denied* (2004),

> [O]ur corpus delicti rule holds that a crime may not be proven based solely on a confession. Rather, the State must provide independent evidence that the offense was committed. The purpose of such a requirement is to prevent the admission into evidence of a confession by a defendant to a crime that never occurred. Thus, the admission of a confession requires some independent evidence of the crime, including evidence of the specific kind of injury and evidence that the injury was caused by criminal conduct. However, this evidence need not prove that a crime was committed beyond a reasonable doubt, but merely provide an inference that a crime was committed. The State is also not required to prove the corpus delicti by independent evidence prior to the admission of a confession, provided the totality of independent evidence presented at trial establishes it. Finally, the inference of a crime may be established by circumstantial evidence.

*Id.* at 214–15 (citations and quotation marks omitted). "Independent proof of the defendant's identity as the perpetrator of the crime is usually not required because such proof, along with the other elements of *corpus delicti*, would constitute proof of the whole crime and would eliminate the value of confessions." *Hick-*

*man v. State*, 654 N.E.2d 278, 283 (Ind.Ct. App.1995).

King's corpus delicti argument is premised solely on his argument that State's Exhibits 6, 7, 8, 16, 17, and 18 were improperly admitted. Because the latter argument was unsuccessful, so too is the former. Accordingly, we affirm King's convictions.

Affirmed.

BRADFORD, J., and BROWN, J., concur.